1
2
3
4
5                        **UNITED STATES DISTRICT COURT**
6                             **DISTRICT OF NEVADA**
7

8    FEDERAL DEPOSIT INSURANCE                    2:11-CV-1936 JCM (RJJ)
     CORPORATION,
9
                         Plaintiff,
10
11   v.

12   26 FLAMINGO, LLC., et al.,

13                        Defendants.

14

15                                **ORDER**

16       Presently before the court is plaintiff Federal Deposit Insurance Corporation's motion for

17   summary judgment (doc. # 27) and defendant 26 Flamingo's countermotion for summary judgment

18   (doc. # 30). Defendant filed an opposition to plaintiff's motion (doc. # 29) and plaintiff replied (doc.

19   # 38). Plaintiff filed an opposition to defendant's countermotion (doc. # 39) and defendant replied

20   (doc. # 40).

21   **I.    Background**

22       On or about October 11, 2005, non-parties to this suit, Dynasty Towers, LLC and Outback

23   Steakhouse entered into a purchase agreement. The purchase agreement related to the sale and

24   development of property located at 3695 West Flamingo Road, Las Vegas, NV 89103. Outback sold

25   Dynasty the subject property for the purposes of constructing a multi-tower high rise condominium

26   project.

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

On or about March 7, 2008, Dynasty executed a deed of trust with Community Nevada Bank ("Community Bank deed of trust") in order to obtain $6.6 million loan from the bank. This deed encumbered the subject property.

The purchase agreement was amended twice.[1] The second amendment took place on or about April 4, 2008. This amendment increased the purchase price, extended the plan approval date, reduced the payment in lieu of condominium unit from $5 million to $4 million, and provided for a second priority deed of trust to secure payment of the payment in lieu of condominium unit and other amounts due under the purchase agreement. In April 2008, Dynasty granted Outback the second deed of trust ("Outback deed of trust"); this deed secured Dynasty's obligations.

On April 4, 2008, through a Grant, Bargain, Sale Deed ("GBS deed"), Outback conveyed title to the subject property to Dynasty. The GBS deed incorporated the purchase agreement and the two related amendments. The Community Bank deed of trust, the Outback deed of trust, and the GBS deed were all recorded at the same time on April 4, 2008.

On or about November 13, 2008, Community Bank recorded a notice of default and on March 2, 2009, Community Bank recorded notice of trustee's sale. On March 24, 2009, Outback recorded a notice of covenant running with the land ("notice of covenant"). On August 14, 2009, Community Bank closed and plaintiff was appointed receiver. On this same day, plaintiff issued a press release and notice of Community Bank's closure. On February 2, 2010, plaintiff acquired title to the subject property through a trustee sale authorized under the Community Bank deed of trust. On May 27, 2011, 26 Flamingo, LLC was created. On September 9, 2010, Outback became entitled to the payment in lieu of condominium unit of $4 million. On June 26, 2011, Outback assigned by quitclaim deed all rights, title, and interest in the notice of covenant, payment in lieu of condominium unit, covenant in the GBS deed, and the Outback deed of trust to defendant.

On June 20, 2011, defendant notified plaintiff of the assignment and demanded that plaintiff pay defendant $4 million for payment in lieu of condominium unit. On December 21, 2011, plaintiff

---

[1] The first amendment did not substantially change the nature of the purchase agreement, it only extended the closing date by a few days.

James C. Mahan
U.S. District Judge

- 2 -

1   filed the instant case seeking declaratory relief. (Doc. # 1). On January 13, 2012, defendant filed

2   counterclaims for declaratory relief and specific performance. (Doc. # 8). Plaintiff has filed a motion

3   for summary judgment (doc. # 27) and defendant has filed a countermotion for summary judgment

4   (doc. # 30).

5   **II.    Discussion**

6       **A.    Standard of Review**

7       The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

8   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

9   show that "there is no genuine issue as to any material fact and that the movant is entitled to a

10  judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to

11  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

12  (1986).

13      Summary judgment is appropriate when the contract terms are clear and unambiguous, even

14  if the parties disagree as to their meaning. *See United States v. King Features Entertainment, Inc.*,

15  843 F.2d 394, 398 (9th Cir. 1988); *see also Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d

16  1401, 1406 (9th Cir. 1985). Interpretation of the contract, including whether it is ambiguous, is a

17  matter of law. *Beck Park Apts. v. United States Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982).

18  In Nevada, a contract provision "is ambiguous if it is reasonably susceptible to more than one

19  interpretation." *See Magrave v. Doormat Properties, Inc.*, 110 Nev. 824, 827 (1994). Further,

20  "ordinarily summary judgment is improper because the differing views of the intent of parties will

21  raise genuine issues of material fact." *Maffei v. Northern Ins. Co. Of New* York, 12 F.3d 892, 898;

22  *see also Sicor Ltd v. Cetus Corp.*, 51 F.3d 848, 857 (9th Cir. 1995).

23      Where a moving party's papers are insufficient to support a motion for summary judgment,

24  or reveal a genuine issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*,

25  323 F.3d 1178, 1182-83 (9th Cir. 2003). At summary judgment, a court's function is not to weigh

26  the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See*

27  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence

2    of the nonmoving party is merely colorable or is not significantly probative, summary judgment may

3    be granted. *See id.* at 249–50.          **B.    Analysis**

4                    **1.    Language of relevant instruments**

5        As an initial matter, Nevada is a race/notice state where the first party to record, unless there

6    is notice, has priority. *See* NEV. REV. STAT. 111.325 (2011). The order of recordation is relevant as

7    it evidences notice. However, the court acknowledges that there are circumstances when the express

8    language of an instrument determines the respective priority of the documents rather than the

9    sequence of recordation. *See Phelps v. American Mortg. Co.*, 6 Cal. 2d 604, 609 (1936) (overruled

10   in part on other grounds by *Firato v. Tuttle*, 48 Cal. 2d 136 (1957)).[2] But for that to be the case, the

11   express language must be exactly that, *express*.

12       Here, it is apparent from the instruments that the language is *not* express. This is the case

13   even more so when the relevant documents contain language that do not clearly delineate the

14   relationship between the instruments. This circumstance lends itself to require evidence of the intent

15   of the drafting parties; something neither party in this instant matter can provide insight to. Even

16   further, neither party has provided the court with evidence from the drafting parties to this effect.

17       The court need only identify a genuine issue of any material fact to deny a motion for

18   summary judgment. *See* FED. R. CIV. P. 56(a). However, the court, in considering all the evidence

19   provided, *see Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011), highlights three

20   instances in which the language the parties rely upon is ambiguous or there is a genuine issue of

21   material fact. Thus, summary judgment, in favor of either party, is not appropriate.

22                    **a.    Section 29 of the purchase agreement**

23

24       The purchase agreement, upon which both parties rely, particularly section 29, is ambiguous

25   regarding the subordination of the purchase agreement in relation to subsequent instruments. As

26   such, there are material issues of fact, including those relating to the parties' intent with respect to

27   ───────────────

28       [2] Such as the instruments being recorded at the same time on the same day.

**James C. Mahan**
**U.S. District Judge**                                        - 4 -

the type of interest, if any, that remained actionable following the transfer of interest from Outback to defendant.

Section 29 of the purchase agreement reads in pertinent part:

> … in the event the Construction Lender takes title to the Project by foreclosure or by deed in lieu of foreclosure prior to the Unit Closing Date, the Construction Lender shall not be bound by this Agreement, provided that Purchaser has delivered a Surety Bond required by Section 6, paragraph (j) of this Agreement.

(Doc. # 27-1, ex. 3, § 29).

## I.      Parties' positions

Plaintiff states that § 29 contains an exception that subordinates the purchase agreement in the event of a foreclosure (doc. # 27, 15:11-12), and that any interest created in the purchase agreement would be extinguished upon foreclosure by the "Construction Lender." Thus, plaintiff argues that defendant's purported interest was subordinated by the Community Bank deed of trust. Under this reading, it follows that when plaintiff foreclosed on the subject property, defendant's interest in the property was extinguished.

Defendant states that the purchase agreement contemplated foreclosure and required additional security; otherwise the construction lender would be bound by the purchase agreement. (Doc. # 29, 17:25-26). Defendant goes on to point out that plaintiff has not provided any evidence to demonstrate that Community Bank was a construction lender. Thus, any foreclosure by Community Bank or its predecessor, plaintiff, would still be bound by the purchase agreement. Further, defendant goes on to argue that even if Community Bank was a construction lender, plaintiff has not provided any evidence to demonstrate that community bank posted a surety bond. Thus, the Community bank deed of trust is subordinate to the purchase agreement obligations.

## ii.      Remaining genuine issue of material fact

On this point, even if language of § 29 is not itself ambiguous, there still remains ambiguity as to the intended impact of this section. First, it is unclear to what extent the parties intended the purchase agreement to survive subsequent instruments. Plaintiff, looking to section 29, states that "[t]he 'terms' of the [agreement] and the First and Second Amendments confirm the intentional and

1   contemplated subordination of the [agreement] to the financing" (doc. # 27, 15:21-22); however,

2   defendant contends that this subordination is based on the type of loan and whether a bond was

3   posted for that preferred position (doc. # 29, 18:2-4). Second, there remains a genuine issue of

4   material fact as to the type of financing Community Bank provided Dynasty and also whether a bond

5   was posted.

6      Alone, this remaining genuine issue of material fact warrants denial of both motions for

7   summary judgment.

8                    **b.      Non-encumbrance clause of the Community Bank deed of trust**

9
    "The Covenant of Non-Encumbrance" in the Community Bank deed of trust states:

10
    The Borrower and Guarantor(s) further covenant and agree that, until such time as
11   the Note is paid in full, the Borrower and Guarantor(s) will not, without the prior
    written consent of the Bank, create, incur, place or permit to be created or placed, or
12   through any act of failure to act, acquiesce in the placing of, or allow to remain, any
    mortgage, pledge, lien (whether statutory, constitutional or contractual), security
13   interest, encumbrance, charge or conditional sale or other title retention agreement,
    regardless of whether the same are expressly subordinate to the indebtedness owed
14   to the Bank, with  respect to the Real Estate and The Property, or leases or rents
    relating thereto.
15

16   (Doc. # 27-1, ex. 1, 12-13).

17                    **i.      Parties' positions**

18
       Plaintiff states that "according to the express language of the [Community Bank deed of
19   trust], the parties to the [deed] intended it would have priority over any other encumbrance

20   referenced or purportedly created in the [Outback deed of trust] or the GBS [d]eed." (Doc. # 27,

21   15:1-3). This would mean that when plaintiff foreclosed on the subject property, all other interests

22   on the property would be junior to the superior position of the Community Bank deed of trust and

23   would be extinguished upon foreclosure. This leaves nothing for Outback to transfer to defendant.

24   Plaintiff's contention hinges on the perspective that defendant's alleged interest in the land was not

25   created until after the Community Bank deed of trust was executed. Thus, if the interest did not exist,

26   the deed could not be impacted by a nonexistent interest.

27      Defendant asserts that the non-encumbrance clause has no ability "to invalidate any existing

28

**James C. Mahan**
**U.S. District Judge**                                    - 6 -

encumbrance." (Doc. # 29, 17:4-5). Further, defendant states that it is not clear whether Community Bank gave written approval as required by the clause. Defendant's contention hinges on the perspective that its assigned interest in the land was created in the purchase agreement, the initial contract between Dynasty and Outback, and thus was an existing encumbrance at the time that the Community Bank deed of trust was executed. It follows then that its interest in the subject property would survive foreclosure based upon the Community Bank deed of trust.

### ii.   Ambiguity as to intent of the parties

Similarly to the issue previously discussed, even if language of the non-encumbrance clause is not itself ambiguous, there still remains ambiguity as to its intended impact of this clause on the parties' rights and interest in the property. Defendant points to language in the purchase agreement that creates its interest in the subject property (doc. # 27-1, ex. 3, § 6); plaintiff , however, looks to the second amendment's language of "covenant running with the land" to argue that the interest was not created until after the Community Bank deed of trust was executed (doc. # 27-1, ex. 5, § 7). Based on the foregoing, the language of the documents, by itself , is not sufficient to determine when Dynasty and Outback intended to create the purported interest in the land.

The ambiguity as to the intent of those party to the relevant agreements serves as a basis to deny of both motions for summary judgment.

### c.   Second amendment

The second amendment at section j states:

> At Closing, Purchaser shall deliver to Seller (I) Second Priority Deed of Trust securing the payment of the Payment in Lieu of the Condominium Unit . . . which shall encumber the Property and the remainder of the Project . . . . The Deed of Trust shall be subject only to one first priority deed of trust and shall provide that prior to allowing the aggregate indebtedness secured by all deeds of trust having a priority superior to the Deed of Trust to exceed $32,950,000.00, Purchaser shall deliver to Seller a Surety Bond . . . .

(Doc. # 27-1, ex. 5, § j).

**James C. Mahan**
**U.S. District Judge**

- 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### i.      Parties' positions

Plaintiff contends that the second amendment "unequivocally establishes the intended priority of the [Outback deed of trust]." (Doc. # 27, 15:12). Plaintiff emphasizes the language "shall be subject only to one first priority deed of trust," (*id.* at 15:14-15) which demonstrates Community Bank deed of trust's superiority to the Outback deed of trust. And once again, it would follow that foreclosure under the Community Bank deed of trust would extinguish any junior interests created by subsequent instruments.

Defendant, however, relies on the parties' acknowledgment of how much the loan could be, $32,950,000. (Doc. # 29, 18:17-18). Defendant states that since the sale price of the subject property was $9,500,000, it would follow that a loan more than three times that amount could only be a construction loan. And per § 29 of the purchase agreement, defendant's interest in the land could be subordinated only to a construction loan. Thus, defendant reads the language of "shall be subject only to one first priority deed of trust" as subordination to a construction loan, not a purchase loan. Thus, the Community Bank deed of trust was not intended to subordinate the Outback deed of trust.

### ii.      Remaining genuine issue of material fact

First, it is unclear what instrument the Outback deed of trust was to be subordinate to. Plaintiff contends that it is the Community Bank deed of trust while defendant asserts that it can only be to a construction loan. At this stage, no evidence has been provided to instruct what type of loan Community Bank provided to Dynasty. Without insight as to the parties intent or evidence of the type of financing Community Bank gave to Dynasty, there still remains a genuine issue of material fact that precludes granting summary judgment in favor of either party.

The court now turns to its jurisdiction over defendant's counterclaims under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA).

### 2.      FIRREA, 12 U.S.C. § 1821

FIRREA mandates that the Federal Deposit Insurance Corporation (FDIC) issue a claims bar date. 12 U.S.C. § 1821. The statute requires that the FDIC provide at least 90-days notice of this date. 12 U.S.C. § 1821(d)(3)(B)(I). The statute further provides that the FDIC mail notice to those

creditors that do not appear on the institution's books that the FDIC later discovers. 12 U.S.C. § 1821(d)(3)(C)(ii). The FDIC's failure to notify a creditor or claimant by mail does not excuse that creditor or claimant from having to exhaust the FIRREA administrative remedies. *See Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1284 (9th Cir. 1994); *see also Schettler v. RalRon Capital Corp.*, 275 P.3d 933, 937 (Nev. 2012)

> FIRREA also mandates a jurisdictional bar that no court shall have jurisdiction over—
>
> (I) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D)*; see also Schettler*, 275 P.3d at 937. Congress intended a mandatory exhaustion of administrative remedies before a litigant may seek relief for a claim against a failed institution. *See e.g.*, *Simon v. FDIC*, 48 F.3d 53, 57 (1st Cir. 1995).

### a.      FIRREA bars defendant's counterclaim

Proper notice activates FIRREA's administrative claims process. After being notified to present their claims, claimants have 90 days in which to present them. 12 U.S.C. § 1821(d)(3)(B)(I). "This notice is very important in that the only way that a claimant can receive a judicial determination of his rights with regard to claims against the assets of the institution is to first present those claims to the receiver within the prescribed 90–days." *FDIC v. Updike Bros., Inc.*, 814 F. Supp. 1035, 1040-41 (D. Wyo. 1993).

The FDIC does not waive FIRREA's administrative exhaustion requirement by failing to provide notice in accordance with12 USC § 1821(d)(3)(B)-(C). It is well known that federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have no power to excuse a Congressionally mandated condition precedent to federal jurisdiction regardless of the reason the condition was not met. *See id.* (Federal courts

James C. Mahan
U.S. District Judge

- 9 -

1   "possess only that power authorized by Constitution and statute . . ." (citations omitted)).

2   Furthermore, FIRREA contains no statutory provision providing the court with jurisdiction prior to

3   exhaustion of the claims procedure.

4
5       Here, defendant asserts that the FDIC failed to comply with FIRREA's notice requirements;

    this assertion implicates procedural due process considerations. Defendant argues that because the
6
    FDIC failed to give both it and its predecessor in interest notice of the required claims procedure
7
    and/or because its claim arose after the FDIC was appointed receiver, FIRREA does not bar its
8
    claim. However, the court cannot circumvent the jurisdictional restrictions FIRREA proscribes. *See*
9
    12 U.S.C. § 1821(d)(13)(D).
10

11      Thus, because defendant has not submitted its claims to the FDIC for administrative review,

12  the court finds that its lacks jurisdiction over defendant's counterclaims.[3] However, to the extent that

13  any affirmative defenses exist, the court retains jurisdiction over these affirmative defenses. See

14  *Schettler*, 275 P.3d at 939-40; *see also Resolution Trust Corp. v. Midwest Federal Sav. Bank of*

15  *Minot*, 36 F.3d 785, 793 (9th Cir. 1993).[4]

16  **III.    Conclusion**

17      As explained above, plaintiff and defendant each rely on differing interpretations of the

18  relevant instruments to support the desired outcome of the case. Without evidence providing insight

19  as to the intent of the drafting parties or evidence supporting either party's interpretation of the

20  relevant documents, this court must deny each party's motion for summary judgment

21      Accordingly,

22  . . .

23      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Federal Deposit

24

25      [3] If the FDIC fails to give proper notice then the FIRREA claims process will not be initiated. Therefore, absent
26  proper notice, the claimant remains free to present claims to the FDIC because the timer period proscribed by FIRREA
    for presenting claims only begins to run after the notice requirements have been properly complied with.
27
        [4] To note, counterclaims asserted in defendant's answer and counterclaims (doc. # 8) are not affirmative
28  defenses.

James C. Mahan
U.S. District Judge                                    - 10 -

1  Insurance Corporation's motion for summary judgment (doc. # 27) be, and the same hereby is,

2  DENIED.

3      IT IS FURTHER ORDERED that defendant 26 Flamingo's countermotion for summary

4  judgment (doc. # 30) be, and the same hereby is, DENIED.

5      IT IS ALSO ORDERED that defendant 26 Flamingo's counterclaims are dismissed without

6  prejudice as this court lacks jurisdiction over these claims pursuant to FIRREA.

7      DATED September 20, 2012.

8

9  _____

10  **UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 11 -